UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                                        PLAINTIFF

v.                                                                   CRIMINAL ACTION NO. 3:11-cr-156-S

BRANNON SHELBURNE                                                                               DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on motion of the defendant, Brannon Shelburne, to suppress evidence (DN 29) in this criminal action against him. Eric Shelburne has adopted the motion of his co-defendant. (DN 32). The United States has responded (DN 31) and both parties have filed supplemental briefing as ordered by the court regarding good-faith reliance on binding appellant precedent under *Davis v. United States*, 131 S.Ct. 2419 __ U.S. __ (June 16, 2011). *See* (DNs 36, 38). For the reasons set forth below, the motion to suppress will be denied.

The defendants base their motion to suppress on the use by law enforcement officials of a Global Positioning System (GPS) tracking device. (DN 29). The GPS tracking device was attached to the frame of a red Ford Mustang registered to Brannon Shelburne on November 10, 2011 by detectives with the Jeffersonville Indiana Police Department ("JDP"). (DN 36, Attachment 2, Detective Todd Hollis Affidavit). On October 22, 2011, a bank was robbed in Jeffersonville, Indiana. A witness to the bank robbery reported to the JPD detectives that an individual believed to have been involved in the robbery was seen entering the passenger side of a red Ford Mustang. The JPD detectives had also received information from a law enforcement officer that a red Ford Mustang was parked outside of a residence in Jeffersonville, Indiana. The JPD detectives then

began physical surveillance of the vehicle and attached a GPS tracking device at about 3:30 a.m. on November 10, 2011. The detectives made the decision to use the GPS tracking device based on their training and experience, and guidance provided to them over the past several years by a local Indiana prosecutor. *Id*.

At approximately 12:35 p.m., on November 10, 2011, JPD detectives observed two male subjects (later identified as Eric and Brannon Shelburne) enter the red Ford Mustang and drive away from the residence. The JPD detectives physically trailed the vehicle and also had one JPD detective monitoring the movement of the GPS tracking device from the JPD Station. The JPD detectives followed the vehicle as it left Clarksville, Indiana and traveled south into Louisville, Kentucky. As surveillance continued, the JPD detectives contacted Louisville Metro Police Department detectives within the Robbery Division and alerted them of the surveillance of the red Ford Mustang. The surveillance led them to a Fifth Third Bank Branch, located in Holiday Manor Court on Brownsboro Road in Louisville, Kentucky, where the detectives allegedly witnessed Eric Shelburne enter the Fifth Third Bank and then exit the bank with a red mist emanating from his pocket while he ran toward the red Ford Mustang. The detectives and uniformed officers stopped the red Ford Mustang and arrested Eric and Brannon Shelburne for suspected bank robbery.

Subsequently, a complaint was filed in this court against the defendants on November 18, 2011. Brannon Shelburne first appeared on the complaint on November 23, 2011. The defendants were indicted by a federal grand jury on December 5, 2011. Eric Shelburne's initial appearance was on December 15, 2011. The indictment alleged, *inter alia*, violations of 18 U.S.C. § 2113(a), for robbing four different banks in Kentucky between September and November of 2011. (DN 14).

The defendants base their motion to dismiss on the recent United States Supreme Court case of *United States v. Jones*, 132 S.Ct. 945, __ U.S. __ (January 23, 2012). In *Jones*, the Court held that the government's installation of a GPS device on an individual's vehicle, and its use of that device to monitor the vehicle's movements, was a "search" for Fourth Amendment purposes. *Id*. at 949. This ruling by the Supreme Court came after the investigation in this case. Therefore, we ordered supplemental briefing by both parties regarding objectively reasonable reliance on binding appellant precedent under *Davis v. United States*, 131 S.Ct. 2419, __ U.S. __ (June 16, 2011). (DN 33).

In *Davis*, the Supreme Court stated that "newly announced rules of constitutional criminal procedure must apply 'retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception.'" 131 S.Ct. at 2430 (quoting *Griffith v. Kentucky*, 107 S.Ct. 708, 479 U.S. 314, 93 L.Ed.2d 649 (1987)). The Court emphasized that "[r]etroactive application does not, however, determine what 'appropriate remedy' (if any) the defendant should obtain." *Id*. 2431 (citing *Powell v. Nevada*, 511 U.S. 79, 84, 114 S.Ct. 1280, 128 L.Ed.2d 1 (1994) (noting that it "does not necessarily follow" from retroactive application of a new rule that the defendant will "gain...relief")). Thus, "the retroactive application of a new rule of substantive Fourth Amendment law *raises* the question whether a suppression remedy applies; it does not answer that question." *Id*. at 2431 (emphasis in original). The suppression "remedy is subject to exceptions and applies only where its 'purpose is effectively advanced.'" *Id*. (citing *Illinois v. Krull*, 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364 (2000)).

The Court then discussed the well-established good-faith exception to the suppression remedy. *Id*. The Court emphasized the purpose of the exclusionary rule by stating, "we have said

- 3 -

time and again that the *sole* purpose of the exclusionary rule is to deter misconduct by law enforcement." *Id*. at 2432 (emphasis in original).  Therefore, the Court held that where police "reasonably relied on binding Circuit precedent," this was the "sort of blameless police conduct" that "comes within the good-faith exception and is not properly subject to the exclusionary rule." *Id*. at 2434.  The Court reasoned that if the suppression remedy was applied to a police officer operating under binding appellant precedent later overturned by the Supreme Court, it would "penalize the officer for the appellate judges' error." *Id*. at 2429.  The Court explained that "[a]bout all that exclusion would deter in this case is conscientious police work," because "[r]esponsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules." *Id*.  The Court concluded: "We therefore hold that when the police conduct a search in objectively reasonable reliance on binding appellate precedent, the exclusionary rule does not apply." *Id*. at 2434.

At the time of the investigation at issue in this case, the United States Court of Appeals for the Sixth Circuit, which covers Kentucky, had not ruled on the issue of whether the attachment of a GPS tracking device to an individual's automobile and the subsequent monitoring of the vehicle was a "search" within the meaning of the Fourth Amendment. *See United States v. Lee*, 2012 WL 1880621, *9 (E.D. Ky. May 22, 2012) ("[n]either the Sixth Circuit nor the Supreme Court had spoken on the issue of GPS surveillance when the agents placed the tracking device on [the defendant's] car").  However, the United States Court of Appeals for the Seventh Circuit, which covers Indiana, had held affirmatively that the limited use of a GPS tracking device to monitor vehicles within a sixty-hour period was not a "search" within the meaning of the Fourth Amendment. *See United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011)*, vacated*, 132 S.Ct.

1534, __ U.S. __, 182 L.Ed.2d 151 (Feb. 21, 2012); *United States v. Garcia*, 474 F.3d 994 (7th Cir. 2007).

Another district court within the Sixth Circuit recently declined to apply the good-faith exception after *Jones*, holding that without a binding Sixth Circuit or Supreme Court opinion affirmatively stating that the use of GPS tracking devices was not a "search," the good-faith exception of *Davis* should not be extended. *See Lee*, 2012 WL 1880621 at *6-10. The *Lee* Court stated:

> Unlike the officers in *Davis*, who "scrupulously adhered to governing law," the DEA agents in this case relied on no binding precedent. Instead, they relied on a national DEA policy. Again, the Court does not intend to disparage the DEA agents for following a policy crafted by their superiors. But that policy guessed–incorrectly–at how the Supreme Court might resolve an unsettled question of Fourth Amendment law. In the Fifth, Seventh, Eighth, or Ninth Circuits, that national policy was supported by binding appellate precedent. But in the Sixth, it was not. As a result, the DEA agents in this case did not act within the confines of the good-faith exception.

*Id.* at *9.

The Court believed that extending the good-faith exception beyond binding appellate precedent "would give police 'little incentive to err on the side of constitutional behavior.'" *Id.* (quoting *Davis*, 131 S.Ct. at 2435 (Sotomayor, J., concurring)). The Court explained:

> If a police officer conducts a search based on non-binding judicial decision–that is, an opinion by a trial court, an unpublished opinion by his own circuit's court of appeals, or a published opinion by another circuit's court of appeals–he is guessing at what the law might be, rather than relying on what a binding legal authority tells him it is. When a police officer follows binding law, suppression can only "discourage the officer from 'doing his duty.'" *Davis*, 131 S Ct. at 2429 (quoting *Leon*, 468 U.S. at 920). But suppression might deter the officer who picks and chooses which law he wishes to follow. *Cf. Davis*, 131 S. Ct. at 2435 (Sotomayor, J., concurring) ("[W]hen police decide to conduct a search or seize in the absence of case law (or other authority) specifically sanctioning such action, exclusion of the evidence obtained may deter Fourth Amendment violations.").

> Limiting the good-faith exception to binding appellate precedent also promotes the "essential interest in readily administrable rules" to govern police. *Atwater v. City of Lago Vista*, 532 U.S. 318, 347 (2001). When carrying out searches, federal officers need only know the binding decisions of the Supreme Court and their circuit's court of appeals.

*Id*. at *8.

Although the defendants were indicted and face charges in this court, within the Sixth Circuit, our case is very different from the case which faced the court in *Lee*. The law enforcement officials who attached the GPS tracking device and monitored its location in this case were Jeffersonville Police Department detectives in Jeffersonville, Indiana. Indiana is within the Seventh Circuit, where two binding appellate decisions had held that the limited use of a GPS tracking device was not a "search" for Fourth Amendment purposes.

In *United States v. Garcia*, the police officers involved had attached a GPS tracking device to the vehicle of an individual suspected of manufacturing methamphetamine and used the device to discover the suspect had been traveling to a large tract of land where equipment and materials used in the manufacture of meth were found. 474 F.3d 994, 995 (7th Cir. 2007). After being convicted on crimes relating to the manufacture of meth, the defendant appealed, arguing that the evidence obtained as a result of the GPS tracking device attached to his car should have been suppressed. *Id*. The Court held that the attachment of the GPS tracking device was not a "search" or a "seizure" within the meaning of the Fourth Amendment and affirmed the denial of the defendant's motion to suppress. *Id*. at 996-98.

The Seventh Circuit returned to the issue of the use of GPS tracking devices by law enforcement officers under the Fourth Amendment in *United States v. Cuevas-Perez*, 640 F.3d 272 (7th Cir. 2011). In *Cuevas-Perez*, the defendant similarly appealed the denial of his motion to

suppress evidence obtained through the use by law enforcement of a GPS tracking device attached to his automobile. *Id*. at 272. After the Seventh Circuit's decision in *Garcia*, the United States Court of Appeals for the District of Columbia had issued its opinion in *United States v. Maynard*, holding that GPS surveillance could amount to a "search" and implicate the Fourth Amendment. 615 F.3d 544 (D.C. Cir. 2010). The defendant in *Cuevas-Perez* urged the Seventh Circuit to adopt the reasoning of the D.C. Circuit in *Maynard*. 640 F.3d at 274-75. The Seventh Circuit instead distinguished *Maynard* by stating that:

> The 28-day surveillance in *Maynard* was much lengthier than the 60-hour surveillance in the case before us. Moreover, the *Maynard* court repeatedly distinguished the surveillance at issue there from surveillance during a single journey. *See Maynard*, 615 F.3d at 558, 560, 565. For instance, the court stated, "[s]urveillance that reveals only what is already exposed to the public–such as a person's movements during a single journey–is not a search." *Id*. at 565 (citing *Knotts*, 460 U.S. at 285, 103 S.Ct. 1081). The case before us, so far as the record reveals, involves such a "single-trip" duration of surveillance.

*Id*. at 274. The Court then reaffirmed *Garcia* and held that the limited use of a GPS tracking device by law enforcement officials was not a "search" implicating the Fourth Amendment. *Id*. at 275-76.

Thus, as of November 10, 2011, when the search at issue in this case took place, it is clear Seventh Circuit precedent authorized the use of GPS tracking devices by law enforcement officials, while Sixth Circuit precedent was silent on the issue. The defendants in this case argue that the essential "search" was the "collection and transmission of data by the GPS," which occurred in the Sixth Circuit and thus the good faith exception for officers acting under binding appellate precedent from *Davis* should not apply.

On the other hand, the United States argues, and we agree, that the pertinent conduct for the *Davis* good-faith exception occurred within the Seventh Circuit, including that: (1) The law enforcement officers who attached the GPS tracking device were Jeffersonville Indiana Police

Department detectives; (2) The JPD detectives were conducting surveillance of the vehicle because of a witness report that implicated the vehicle during a bank robbery in Indiana; (3) The vehicle had an Indiana license plate and the JPD detectives located the vehicle outside of an Indiana residence; (4) The JPD detectives attached the GPS tracking device in Indiana; (5) The JPD detectives made the decision to use GPS surveillance based on their training and experience within the JPD and guidance from a local Indiana prosecutor; (6) The actual surveillance of the movement of the GPS tracking device was performed by a JPD detective, from the JPD Station. Given these undisputed facts, we find that the relevant binding appellate precedent under *Davis* is precedent from the Seventh Circuit.

The inquiry for the good-faith exception under *Davis* then becomes whether the JPD detectives acted in objectively reasonable reliance under the Seventh Circuit precedents of *Garcia* and *Cuevas-Perez*. *See Davis*, 131 S. Ct. at 2423-24, 2428. We find that the conduct of the JPD detectives in this case was in strict compliance with the then-binding precedent of *Garcia* and *Cuevas-Perez*. As outlined above, *Cuevas-Perez* affirmed the holding from *Garcia* that the use by law enforcement officers of a GPS tracking device was not a "search" and distinguished *Maynard* by stating that a limited 60-hour surveillance involving a "single-trip" did not implicate the Fourth Amendment. *Cuevas-Perez*, 640 F.3d at 274-76.

The JPD detectives in this case used a GPS tracking device to aid them in their limited surveillance of the red Ford Mustang for under 24-hours. The fact that the defendants chose to drive to Louisville, Kentucky and that JPD detectives tracked them to a bank in Louisville, Kentucky does not affect our *Davis* analysis here. The JPD detectives should not be charged with knowledge of the appellate precedent in every jurisdiction that the defendants might have chosen to drive the red Ford

Mustang. The JPD detectives acted in good-faith by operating under the binding appellate precedent of their own jurisdiction.

We conclude that the binding appellate precedent good-faith exception from *Davis* applies and that the defendants' motion to suppress should be denied. An order consistent with this opinion will be entered this date.

June 19, 2012

Charles R. Simpson III, Judge
United States District Court

D02